## Commonwealth v. McCormick, Appellant.

*Criminal law—Criminal procedure—Failure to certify list of jurors—Motion to quash array.*

The fact that the certificate to the list of jurors, selected in accordance with Section 3 of the Act of March 8, 1874, P. L. 46, was attached by mistake to the minutes of the board of jury commissioners, instead of being attached to the list filed in the prothonotary's office, is not ground for quashing the array of petit jurors. Where there is no suggestion that the list has been tampered with, or any allegation that any injury has been done to the defendant, the irregularity in the records may be amended, and the motion to quash the array is properly dismissed.

*Criminal law—Criminal procedure—Fugitive from justice—Motion to quash indictment.*

Where one charged with a crime escapes from an officer, after being notified that he is under arrest, he is a fugitive from justice, and an indictment charging him with the offense committed can be sent to the grand jury without a preliminary hearing or leave of court.

Argued March 10, 1919. Appeal, No. 29, April T., 1919, by defendant, from judgment of Q. S. Fayette Co., March Sess., 1918, No. 228, on verdict of guilty in case of Commonwealth v. Mont McCormick. Before ORLADY,

P. J., PORTER, TREXLER, WILLIAMS and KELLER, JJ. Affirmed.

Indictment for assault and battery, aggravated assault and battery and assault and battery with intent to kill. Before REPPERT, J.

Motion to quash array of petit jurors and to quash indictment. The court dismissed both motions.

The opinion of the Superior Court states the case.

On trial defendant was convicted of the first and second counts charged in the indictment and judgment of sentence was passed. Defendant appealed.

*Errors assigned* were refusal to quash the array and refusal to quash indictment.

*H. S. Dumbauld,* for appellant, cited: Commonwealth v. Haines, 27 C. C. Rep. 81; Commonwealth v. Hall, 23 Pa. Superior Ct. 104; Com. v. Bethlehem, 15 Pa. Superior Ct. 158; Commonwealth v. Carlucci, 48 Pa. Superior Ct. 78; Rowand v. Commonwealth, 82 Pa. 405.

*George Patterson,* and with him *S. J. Morrow,* District Attorney, for appellee, cited: Blackman v. Commonwealth, 124 Pa. 578; Commonwealth v. Delamater, 13 C. C. 153; Commonwealth v. Weber, 67 Pa. Superior Ct. 497; Commonwealth v. Smith, 4 Pa. Superior Ct. 1.

OPINION BY PORTER, J., April 21, 1919:

We have in this case two specifications of error, neither of which has any bearing on the guilt or innocence of the appellant, nor indicates the deprivation of any of his substantial rights. We will dispose of the specifications in the order in which the rulings complained of were made in the court below. The second specification alleges error in the action of the court in overruling the motion to quash the indictment. This specification does not set forth the reasons averred by the defendant for quashing the indictment, all that is contained in the

specification being the allegation that the court erred in making the following order: "The defendant could have had the hearing if he had accompanied the officers as it was his duty to do, and it is not reasonable to suppose that such opportunity as he desired to have his own witnesses present before the hearing was finally concluded would have been denied, or he could have had the circumstances of the offense for which he was detained fully inquired into on a habeas corpus proceeding if that was what he desired. ˉ The motion will be overruled with an exception to the defendant." The motion to quash the indictment is printed in the appendix. The burden of its complaint is that "the indictment was sent to the grand jury without a previous hearing or sanction of the court, notwithstanding the defendant was not a fugitive from justice."

The information was sworn to before the justice on March 4, 1918, and the warrant on that day issued to the constable. The transcript of the proceedings before the justice, endorsed on the information, recited that the constable "located" the defendant on March 5th and told him he was under arrest, the defendant asked permission to go and see his attorney and told the constable to wait at Alderman Michael's office and he would be there in a few minutes to give him bail. The constable went to Alderman Michael's office and while waiting there was called on the telephone by defendant who said that he would not be there, that he intended to leave. The constable made every effort to locate the defendant, even going so far as to search his house, and was unable to locate him, "and he is therefore now a fugitive from justice." The sworn return of the constable, attached to the information, recited the facts set forth in the transcript. The facts thus stated certainly disclosed that the constable was negligent, but they also clearly indicated that the defendant had escaped from the officer by a trick after being notified that he was under arrest. There can be no doubt that one charged with crime who

escapes from an officer after being notified that he is under arrest for the offense is a fugitive from justice. As the facts were thus presented by the record the finding of the court, that the defendant could have had a hearing if he had accompanied the officer as it was his duty to do, was clearly right. The defendant challenged the recital of the transcript, as he had a right to do, and took testimony for the purpose of showing that he had been denied a preliminary hearing, and the Commonwealth also took testimony as to the manner in which the justice and the constable had proceeded. The testimony of the defendant clearly established that he had, on the evening of March 4th, been notified by the justice of the peace that the information had been made and fully informed as to the nature of the charge and the identity of the prosecutor; that he met the constable the next morning and asked him if he had a warrant for him, and the officer replied, "Yes." The defendant then said, "All right, I will go over and see Harry (his counsel). You go down to Michael's (an alderman of Uniontown) and I will go up and see Harry." The defendant, according to his own story, did not go to the office of his counsel but went to his own home for a few minutes, from there to another house and then, in company with his wife, left for the City of Pittsburgh. He testified that the constable told him that the hearing in the case was fixed for 2 o'clock that afternoon, and there is nothing in his testimony which could be held to indicate that he at that time intimated to the officer that the time fixed for the hearing would not suit his convenience. The testimony of the defendant, who had for a long time served as constable, clearly indicates that, in his opinion, a man is not under arrest until the warrant has been read to him. The testimony of Wright, the constable, was to the effect that he had said to the defendant, "Mont, I am sorry, I will have to place you under arrest," whereupon the defendant said "That's all right, we will go to Michael's office, I got bail signed

over there" and "I said 'All right.'" That the defendant
asked him what time the hearing was set for and he told
him two o'clock that afternoon, that the defendant then
said he wanted to go see his attorney and arrange for
him to be at the hearing and requested the officer to
wait for him at Squire Michael's office, and the latter
consented to do so. That the officer went to Squire
Michael's office and within a few minutes the defendant
called him by telephone and said, "You didn't read any
warrant to me, and there isn't going to be any hearing,
if you want me you will have to get me." Even if this
testimony outside of the record were before us, which it
is not, we certainly would not be warranted in finding
that the court below abused its discretion in overruling
the motion to quash the indictment.

The first specification of error complains of the action
of the court in overruling the defendant's motion to
quash the array of petit jurors, summoned for March
sessions, 1918. The motion to quash the array was upon
the ground that the list of names selected and placed in
the wheel for the year 1918 was not certified as provided
by Section 3 of the Act of March 18, 1874, P. L. 46. The
facts with regard to this matter are upon all hands ad-
mitted to be correctly stated by the learned judge of the
court below, and are as follows: On January 29, 1918, a
certificate in the form required by Section 3 of the Act
of March 18, 1874, P. L. 46, was prepared and signed by
the jury commissioners and an additional law judge
prior to the filing in the prothonotary's office of the list
of jurors selected by said officials and placed in the
jury wheel for the year 1918. The clerk of the jury com-
missioners, who witnessed the signatures, attached said
certificate to the minutes of the board composed of said
officers, and filed a duplicate copy of the list, instead of
attaching it to the list filed in the prothonotary's office
as required by law. This was an inadvertence. After
the motion to quash the array had been filed, the court
ordered the certificate to be detached from the minutes

of the board and attached to the list then on file in the office of the prothonotary, and this was done.  We must take the record before us, as it stood, when the motion to quash was overruled, and the facts as gathered from the opinion of the judge of the court below : Klemmer v. Railroad, 163 Pa. 521.  There is no suggestion that the list on file in the office of the prothonotary was not identical with the duplicate list attached to the minutes of the jury commissioners to which the certificate was first attached by the clerk.  Neither of the lists had been tampered with, each was a correct list of the names of the jurors selected and placed in the wheel.  The absence of the certificate from the list on file in the office of the prothonotary was an irregularity, but the records of the officers, made at the proper time, contained everything necessary to correct it.  The list was duly filed, and came from the proper custody, there was no evidence of it having been tampered with, and it is not denied that it is the list from which the jurors were drawn.  We are of opinion that it was within the power of the court to order the amendment.  Where it is not alleged or shown that any injury was done to the prisoner, an amendment of this character should be sustained : Commonwealth v. Byrne, 1st Kulp 378;  Commonwealth v. Weaver, 61 Pa. Superior Ct. 571;  Rolland v. Commonwealth, 82 Pa. 322;  Commonwealth v. Zillafrow, 207 Pa. 274.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.