UNITED STATES of America, Appellee,

v.

William C. MILLER, a/k/a Chris Miller; a/k/a William Bond, Appellant.

No. 90–3071.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1991.

Decided Oct. 10, 1991.

Rehearing Denied Nov. 8, 1991.

Before McMILLIAN and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.

### ORDER

Thomas J. Cox, Kansas City, Mo., argued, for appellant.

Ronda R. Reems, Kansas City, Mo., argued (Jean Paul Bradshaw II, and Carol Zapien, on brief), for appellee.

Before JOHN R. GIBSON and LOKEN, Circuit Judges, and URBOM,[*] District Judge.

JOHN R. GIBSON, Circuit Judge.

William C. Miller was convicted of knowingly and intentionally possessing cocaine base (crack) with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (1988), possessing a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c) (1988), and knowingly possessing a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (1988). On appeal, Miller claims that the district court[1] erred by: (1) refusing to suppress items seized from his hotel room at the time of his arrest; and (2) requiring his counsel to make his peremptory strikes before requiring the government to make its peremptory strikes. We affirm.

The fugitive squad of the Kansas City, Missouri, Police Department received a tip that Miller, a fugitive from the Missouri Department of Corrections, was in Room 16 at the Motor Inn Hotel using the name "William Bond." Officers Kramer and Marquis went to the hotel with a warrant for Miller's arrest. The officers had a pic-ture of Miller and a computer printout which indicated that Miller was known to be armed and physically violent. When the officers arrived at the hotel, they spoke with the hotel manager, who told them that "William Bond" was staying in Room 16, and that someone else was in the room with him.

The officers knocked on the hotel room door and Miller opened it. Officer Kramer went into the room first, pushed Miller to the right, advised him that he was under arrest, and placed him up against the wall. Kramer frisked Miller and while holding him against the wall, pulled opened a nightstand and found a blue steel revolver. Kramer also leaned over next to the nightstand, flipped the pillow off the bed, and saw what appeared to be narcotics. Meanwhile, Officer Marquis secured the other man in the room. Kramer then handcuffed Miller.

Miller moved to suppress the evidence recovered from the hotel room. Following a hearing, the district court denied the motion, ruling that the search was incident to arrest and not in violation of Miller's fourth amendment rights. *United States v. Miller*, No. 90–00168–01–CR–W–3, slip op. at 3 (W.D.Mo. Sept. 25, 1990). A jury trial commenced on October 1, 1990. During jury selection, Miller's attorney struck two jurors for cause. The judge instructed Miller's attorney to use his peremptory strikes before the government did so, saying: "Since I've sustained all of defendant's challenges for cause, we'll let defendant have the opportunity of making his strikes first." The jury returned a guilty count on all charges, and this appeal followed.

I.

Miller argues that the district court erred in denying his motion to suppress evidence seized at the time of his arrest. Miller argues that officers can search without a warrant only the area within the immediate control of the person arrested. *Chimel v.*

---

[*] The HONORABLE WARREN K. URBOM, Senior United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri.

*California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Supreme Court has defined "immediate control" to include the area from within which the arrestee might gain possession of a weapon or destructible evidence. *Id.* at 763, 89 S.Ct. at 2040.

Miller argues that the officers immediately recognized him as the individual they wanted to arrest when they opened the door, and that the officers went into the room to arrest him rather than arresting and handcuffing him in the doorway of the room. He also states that at the time of the search he was held against the wall with his back toward the nightstand which was located at least five feet from him, and thus, the nightstand was not within his immediate control.

■ The shortcoming of Miller's argument is found in the findings of fact the district court made after the suppression hearing. The district court rejected Miller's version of the arrest as incredible and also observed that Miller was only four to four and one-half feet from the nightstand and bed, and that Miller, who is six feet tall, could have reached the gun and cocaine from where he stood. Slip op. at 2. The district court findings are fully supported by the testimony of Officers Kramer and Marquis, and are not clearly erroneous. *See United States v. Palumbo,* 735 F.2d 1095, 1097 (8th Cir.), (officers were justified in looking behind drawer of dresser which was in arm's reach of unhandcuffed defendant), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984). There was no error in denying the motion to suppress.

## II.

Miller also argues that the district court committed reversible error by requiring Miller to take all of his peremptory strikes before requiring the government to take any of its peremptory strikes. He contends that this procedure provided the government with an undue procedural advantage because it allowed the government to view the defense trial strategy and afforded the government more strikes because it might have stricken the same jurors as those stricken by Miller. He argues that the normal local practice in the Western District of Missouri tracks that of the Missouri courts, where the prosecution is required to make its peremptory challenges before the defendant. He also views the judge's comments as showing the procedure was punitive in nature for his striking jurors for cause.

■ The procedures used for jury selection are committed to the district court's discretion. *United States v. Romero,* 780 F.2d 981, 984 (11th Cir.1986). Miller must show the district court's decision regarding the order in which the government and the defendant exercised their peremptory challenges amounted to an abuse of discretion. Miller must show actual prejudice unless his right to peremptory challenges was denied or impaired. *United States v. Morris,* 623 F.2d 145, 151 (10th Cir.) (citing *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965)), *cert. denied,* 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980).

■ Miller directs us to no case law which suggests that the procedure employed was improper. Indeed, in *Philbrook v. United States,* 117 F.2d 632 (8th Cir.), *cert. denied,* 313 U.S. 577, 61 S.Ct. 1097, 85 L.Ed. 1534 (1941), we held that the district court can require the government to exercise its peremptory challenges before the defense does, but that it is not required to do so. *Id.* at 635. Miller cites several cases from other circuits in which courts have reversed convictions because of improper procedures used in exercising peremptory challenges. In these cases, however, the procedure employed caused a loss or significant restriction of the defendant's right to use his peremptory challenges, a result far different than the one here.

We conclude that Miller failed to meet his burden of showing that the district court abused its discretion or that Miller was prejudiced by the procedure used. We do not read the district judge's statement as being punitive in nature. Miller was not

denied the use of any of his peremptory challenges, and we see no prejudice resulting from the procedure employed.

We affirm the conviction.