UNITED STATES of America, Appellee,

v.

**Elijah WARREN, Appellant.**

**No. 92–2114.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1992.

Decided Dec. 22, 1992.

Rehearing Denied Feb. 18, 1993.

F. Clayton Tyler, and Hersch Izek, Minneapolis, MN, for appellant.

Nathan P. Petterson, Asst. U.S. Atty., Minneapolis, MN, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Elijah Warren challenges his federal drug-offense conviction on the ground that the procedure used by the District Court[1] in conducting *voir dire* violated his Fifth and Sixth Amendment rights. We affirm.

## I.

Elijah Warren was charged with possession of cocaine base with the intent to distribute and with using a firearm during and in relation to a drug-trafficking offense. His case went to trial in January of 1992. During *voir dire*, the District Court, as is its custom, excused the panel from the courtroom before the parties made their peremptory challenges. Warren's attorney says this procedure took him by surprise. He was not prepared to strike potential jurors by name alone, without being able to see their faces. When Warren objected and asked that the jury be brought back into the courtroom, the Court refused.

As a result, Warren and his attorney had to guess at the names of the people he wanted to challenge. He guessed wrong, at least in part. Two jurors Warren's attorney would have struck escaped his challenges and went on to be part of the jury that convicted him. One of these jurors became the foreman. Warren now claims that the District Court's methods violated his Fifth Amendment due-process right and his Sixth Amendment right to a fair and impartial jury.

## II.

Trial judges have broad discretion in the jury-selection procedure they use in their courtrooms. Consequently, when those procedures are challenged, we review for abuse of discretion only. *United States v. Miller*, 946 F.2d 1344, 1346 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1501, 117 L.Ed.2d 641 (1992). (Warren does not claim that any statute or rule was violated.) We also require a showing that the alleged abuse resulted in either actual prejudice or the denial or impairment of the right to exercise peremptory challenges. *Id.*

The District Court did not abuse its discretion here. There is nothing improper in excusing potential jurors from the courtroom before the parties make their challenges. To avoid being surprised, the parties need only ask in advance what the Court's practice is. The usual way to keep track of who the jurors are is to make a seating chart. Counsel can then go over the chart with the client before making strikes. Sufficient note-taking by the attorney and discussion with the client will avoid surprise. Here, moreover, the government notes that Warren's attorney had already tried a case before this particular

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

district judge. Appellee's Br. 7. Warren does not deny this statement. The procedure used for conducting *voir dire* should have come as no surprise.

Nor can Warren show that he was prejudiced by the District Court's methods. There is no way to know whether a difference in the make-up of the jury would have made a difference in the verdict. Warren's right to peremptory challenges was not restricted or impaired. The fact that he might have exercised his challenges better, had his attorney been more prepared, is not reversible error.

Warren cites *United States v. Ricks*, 802 F.2d 731 (4th Cir.) (en banc), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986), but we think the case is distinguishable. In *Ricks*, as here, the "struck jury" method of jury selection was used. That is, after all challenges for cause had been ruled on, counsel were given a list of the remaining venire members and asked to exercise their peremptory strikes. The size of the venire, however, was considerably larger than necessary. As a result, the number of potential jurors left after the exercise of peremptory challenges was substantially greater than the number needed—greater, that is, than 12 plus the alternates. Fifty-seven names were left on the list at this point. The Court selected number 15 as foreman (apparently the local custom was for the Court to appoint the foreman) and chose the remaining jurors from the portion of the list below the foreman's name—that is, from venire members numbered 16 or higher.

The Fourth Circuit held this procedure to be reversible error. The vice of the procedure, essentially, was that counsel could not know, when deciding whom to strike with a peremptory challenge, who would be left on the jury. The holding was summarized as follows:

> ... it is essential to the validity of a jury chosen by the "struck jury" system that the list given to counsel contain only the approximate number of necessary potential jurors, or, if a larger list is given, that the court give clear, unambiguous instructions about the portion of the list, containing not more than the approximate number of necessary potential jurors, from which the jury will be selected.

802 F.2d at 733.

Assuming, but not deciding, that *Ricks* would be followed in this Circuit, we think the case is not controlling. In *Ricks* the interference with the effective exercise of the right of peremptory challenge was much more direct. Counsel could know that names stricken would not be on the jury, but they could not know which portion of the large list of names should be the focus of the strikes. A large element of guesswork and chance was introduced into the jury-selection process. The procedure used was a structural assault on the effectiveness of peremptory challenges. Here, the practice complained of need not have had any effect on the challenges. As we have explained, a combination of note-taking and close consultation with the client could have taken care of any problem handily.

Affirmed.